IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 06-cv-00783-WDM-BNB

WAYNE SMITH,

Petitioner,

v.

WARDEN MILYARD, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

Respondents.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter is before me on the **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254** (the "Application"), filed by Wayne Smith (the "petitioner") [Doc. #3, filed 4/25/06]. The respondents filed an Answer on June 19, 2006 [Doc. #16]. For the following reasons, I respectfully RECOMMEND that the Application be DENIED.

## I.  THE LAW

This Court may review the petitioner's application for writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). An application cannot be granted unless it appears that the petitioner has exhausted available state remedies. 28 U.S.C. § 2254(b)(1).

If a petitioner exhausts his available state remedies, his application may be granted only if the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination

of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

Factual determinations made by the state court are presumed correct unless rebutted by clear and

convincing evidence. 28 U.S.C. § 2254(e)(1).

Generally, if a petitioner fails to exhaust available state remedies, a federal court should

dismiss the application without prejudice so that the state remedies may be pursued. Demarest v.

Price, 130 F.3d 922, 939 (10th Cir. 1997). The federal court, however, should first consider

whether the petitioner would be able to raise the unexhausted claims in the state court. Id.

If the state court to which the petitioner would be required to present his claims in order

to meet the exhaustion requirement would now find the claims procedurally barred, the

petitioner's claims are procedurally defaulted for purposes of federal habeas corpus relief.

Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991). The federal court may not consider issues

raised in a habeas corpus petition that have been defaulted in state court on an independent and

adequate procedural ground unless the petitioner can show cause for the default and actual

prejudice as a result of the alleged violation of federal law or can demonstrate that the failure to

consider the claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. 722,

750 (1991). The determination of cause, prejudice, and fundamental miscarriage of justice are

matters of federal law. Demarest, 130 F.3d at 941.

## II. BACKGROUND

The background facts of this case are described by the Colorado Court of Appeals as

follows:

> Defendant was convicted at trial of felony murder, second degree
> murder, and attempted sexual assault. The evidence at trial
> established that defendant and two other persons attacked a fellow
> resident of a homeless encampment. Defendant beat the victim and
> attempted to rape him. Defendant and the two others then threw

the victim into a nearby river.  The victim died of blunt force
trauma associated with drowning.

*Answer*, Ex. G, p. 1.

The Colorado Court of Appeals affirmed the petitioner's conviction and sentence.  Id. at

Ex. C, p. 5.  The petitioner filed a Petition for Writ of Certiorari, id. at Ex. N, which was denied

on March 11, 1996.  Id. at Ex. D.

On September 21, 1995, the petitioner filed a *pro se* motion for postconviction relief

alleging ineffective assistance of counsel on numerous grounds.  Id. at Ex. E, p. 3; Ex. G, p. 1.

The trial court denied the motion without a hearing on the grounds that it did not contain

sufficient allegations to state a claim for relief.  Id. at Ex. G, p. 1.  The petitioner, through

counsel, appealed the denial.  Id. at Ex. E.  The appellate court rejected two of the petitioner's six

claims on the merits.  Id. at Ex. G, pp. 4-5.  The appellate court reversed and remanded for an

evidentiary hearing on the remaining four claims.  Id.

The petitioner submitted an amended motion for postconviction relief to the trial court.

Id. at Ex. H, p. 3.  After conducting an evidentiary hearing, the trial court denied the motion for

postconviction relief.  Id. at Ex. H, p. 3; Ex. K, p. 2.  The appellate court affirmed the trial court.

Id. at Ex. K.  The petitioner filed a Petition for Writ of Certiorari, id. at Ex. O, which was denied

on May 9, 2005.  Id. at Ex. L.

The petitioner filed his Application on April 25, 2006.  The Application alleges the

following claims:

(1)   The petitioner's trial counsel was ineffective on fifteen separate bases;

(2)   The petitioner's due process rights were violated when he was denied the right to

testify at trial;

(3)   Witness Cummings' use of a typed statement during his testimony violated the petitioner's right to due process because it was not provided in discovery;

(4)   The petitioner's right to due process was violated because his attorney was not permitted to establish that Cummings had requested a competency evaluation during his own trial proceedings; and

(5)   The prosecutor improperly shifted the burden of proof to the petitioner during closing arguments by stating that the petitioner should have proved that Cummings "had some sort of sweet deal."

## III.  ANALYSIS

### A.  Claim Two[1]

Claim Two alleges that the petitioner's due process rights were violated when he was denied his right to testify at trial. *Application*, p. 6 and twenty-first consecutive page.  The petitioner presented this claim to the state appellate court, *Answer*, Ex. A, pp. 5-9, and to the state supreme court. Id. at Ex. N, pp. 5-10.  Thus, Claim Two has been exhausted in the state courts, and the Application can be granted only if the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).

In his briefs to both the appellate court and the supreme court, the petitioner stated that (1) he waived his right to testify after the prosecution's case; (2) the court found the waiver to be

---

[1]Claim Two and a portion of Claim One are related.  For the purpose of clarity, I address Claim Two prior to addressing Claim One.

knowing, intelligent, intentional, and voluntary; and (3) after presentation of the defense case, he

had the following colloquy with the trial judge:

> Defendant:   Do I get to say in front of the jury - - it don't matter. It was important that, that I get her impeached, Donna Dotter, and suppressed her evidence, and these witnesses, if they would have come in, they will get suppressed or impeached, Judge?  It's against my constitutional rights.

> Court:   Well, Mr. Smith, you had the opportunity to testify.  I found that you knowingly, intelligently, voluntarily waived that right.

> Defendant:   No, but the job ain't been done right, Judge.

> Court:   So I don't - -

> Defendant:   I'm saying these men who was investigators, by the way - -

> Court:   You have been - -

> Defendant:   I don't have - -

> Court:   You have been a real gentleman throughout these proceedings thus far, and - -

> Defendant:   I got a problem.  It's my life, yeah.

> Court:   All I'm saying is I am not going to put up with any disruption out there.  And if you get disruptive, then I am going to have to have you taken from out there, and you will have the rest of the trial just sitting in the jail.  So you have done real well thus far.

> Defendant:   No, you don't see my point of view.

> Court:   I see your point fine.  I'm just saying I am not going to let you make a scene out there.

> Defendant:   You know, my God, you're not talking about - - because my rights have been violated.

> Court:   I think you made your statement, Mr. Smith.

*Answer*, Ex. A, p. 7; Ex. N, pp. 6-7.

The petitioner claims that this discussion put trial court on notice that he had not waived his right to testify, and that the trial court's failure to further inquire into whether he wished to testify was a violation of his constitutional rights. The Colorado Court of Appeals denied this claim as follows:

> Defendant first contends that the trial court did not protect his right to testify. He argues that before the conclusion of his case, he asked the court if he was going to be able to address the jury. He claims that this statement indicated his desire to testify and that the court erred in not reassessing his prior waiver of his right to testify. The record belies this allegation.
>
> The defendant was advised of his right to testify pursuant to People v. Curtis, 681 P.2d 504 (Colo. 1984) at the conclusion of the prosecution's case. Defense counsel requested that a decision be delayed until defendant's intentions could be reconfirmed. The following morning, the defendant indicated that he would not testify.
>
> After the defense rested, after a discussion on the instructions, after a lunch break, and after a discussion on potential juror replacement, defense counsel indicated that defendant wanted to put something on the record. The defendant stated that he had a right to adequate counsel and a right to adequate investigation. He complained that his defense counsel had not interviewed two paramedics who could have testified to the state of intoxication of one of the prosecution's witnesses. In regard to that witness, he stated: "Do I get to say in front of the jury - - it don't matter. It was important that I get her impeached. . . ."
>
> The court perceived this comment as an indication of defendant's dissatisfaction with his defense team and stated on the record that his counsel had done "an outstanding job."
>
> The defendant does not argue that his Curtis advisement was defective in any way. He maintains that the statement quoted above put the court on notice that his earlier waiver of his right to testify should not have been accepted and that the court should have made further inquiry into the waiver of his right to testify. However,

> reading this statement in the context of his complaint of ineffective
> assistance of counsel, we cannot say that the trial court should have
> made further inquiry into defendant's waiver of his right to testify.
>
> A review of the pertinent portions of the record indicates that the
> defendant was frustrated with an alleged failure of his counsel to
> investigate the paramedics in order to obtain testimony to impeach
> the credibility of the prosecution's witness. A fair reading does not
> indicate that the defendant desired to take the witness stand and
> testify before the jury. Hence, we find no reason to reverse
> defendant's conviction.

*Answer*, Ex. C, pp. 1-2.

Under federal law, absent any showing that the defendant actually made a decision to

testify and that he was subsequently deprived of the opportunity to testify, there is "no

constitutional or federal mandate to inquire further into a defendant's decision not to testify."

United States v. Janoe, 720 F.2d 1156, 1161 (10th Cir. 1983). See also United States v. Leggett,

162 F.3d 237, 246 (3rd Cir. 1998) (citing Janoe as one of the majority of appellate courts to agree

that "a trial court has no duty to explain to the defendant that he or she has a right to testify or to

verify that the defendant who is not testifying has waived the right voluntarily").

Here, the record does not show that the petitioner made an affirmative request to testify.

Absent such a showing, there is no constitutional or federal violation generated from the trial

court's failure to inquire further. Thus, the appellate court's decision was not contrary to

established federal law, nor did it result in an unreasonable determination of the facts presented in

the state court proceeding. Factual determinations made by the state court are presumed correct

unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The petitioner does

not attempt to rebut any factual determinations made by the state court. Therefore, I find no basis

upon which to grant the petitioner's Application with regard to this claim. 28 U.S.C. § 2254(d).

### B. Claim One

Claim One alleges that the petitioner's trial counsel were ineffective because they (a) failed to conduct pretrial discovery; (b) failed to give pretrial advice; (c) failed to explain the possible sentences, the nature of the charges, and the likelihood of conviction versus acquittal; (d) failed to adequately prepare and present the defenses; (e) failed to file a motion for examination or continuance until the question of witness Allen Cummings' competency was resolved; (f) failed to call as witnesses Susan Cassidy, Corey Marrs, the paramedics, and Terry Tanner; (g) failed to properly investigate the scene of the crime, interview witnesses early on, drag the river to show obstacles in the water that might have caused the victim's injuries, and take photos at different times and from different angles to show that the witnesses could not have seen what they claimed to see; (h) presented an intoxication defense which increased the likelihood that the petitioner would be convicted of the general intent offenses; (i) failed to lay a proper foundation to introduce the blood alcohol level of witness Dotter; (j) failed to retain a toxicologist to testify as an expert witness; (k) failed to retain an expert witness in eyewitness identification; (l) failed to strike juror Stone; (m) failed to advocate for the petitioner's right to testify; (n) failed to move to strike Cummings' testimony; and (o) failed to have DNA testing performed on the hammer. *Application*, fifth consecutive page and twelfth through twentieth consecutive pages.

The petitioner presented to the state district court, the state appellate court, and the state supreme court only the following claims:

1.  Subclaim (f) to the extent it alleges that counsel were ineffective for failure to call the paramedics and Terry Tanner as witnesses, *Answer*, Ex. H, pp. 16-19; Ex. O, pp. 7-9;

2.  Subclaim (g) insofar as it alleges that counsel failed to properly investigate the scene of the crime and interview witnesses early on, id.;

3.  Subclaim (j) in its entirety, id. at Ex. H, pp. 6-15; Ex. O, pp. 6-7; and

4.  Subclaim (m) in its entirety.  Id. at Ex. H, pp. 19-22; Ex. O, pp. 3-5.

Of the remaining claims, several were not presented to any of the state courts; many were presented to the state district court but not the state appellate courts; and none of them were presented to the state supreme court.  *District Court Record*, People of the State of Colorado vs. Wayne Smith, 93CR2275, Bates Nos. 000182-000202, 000341-000343 ("District Court Record"); *Supplemental Volume*, The People of the State of Colorado vs. Wayne A. Smith, 92CR2275, 03CA1210 ("Supplemental Volume") [Doc. #27, filed December 13, 2007]; *Answer*, Exs. A, E, H, N and O.  Therefore, these claims are not exhausted.[2]

When a petitioner fails to exhaust available state remedies, the federal court must determine whether the petitioner would be able to raise the claim in the state court.  Demarest,

------

[2]I am aware of Rule 51.1, C.A.P., which became effective May 18, 2006.  Rule 51.1 provides the following:

> (a) Exhaustion of Remedies. In all appeals from criminal convictions or post-conviction relief matters from or after July 1, 1974, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error. Rather, when a claim has been presented to the Court of Appeals or Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies.

> (b) Savings Clause. If a litigant's petition for federal habeas corpus is dismissed or denied for failure to exhaust state remedies based on a decision that this rule is ineffective, the litigant shall have 45 days from the date of such dismissal or denial within which to file a motion to recall the mandate together with a writ of certiorari presenting any claim of error not previously presented in reliance on this rule.

The parties have not raised Rule 51.1 as an argument against exhaustion in the state supreme court.  Nevertheless, I note that the rule was not in effect at the time the petitioner's claims were pending in the state courts.  *Answer*, Exs D and L.  Therefore, exhaustion at the state supreme court level was a remedy "available" to the petitioner for purposes of 28 U.S.C. § 2254(b)(1).  See Wenger v. Frank, 266 F.3d 218 (3d Cir. 2001).

130 F.3d at 939. If the claim would be procedurally barred in the state court, the claim is procedurally defaulted for purposes of habeas relief. Coleman, 501 U.S. at 735 n.1.

These claims are procedurally barred from state court consideration. To the extent the petitioner has not raised the unexhausted claims in the state district court, the state courts will not permit the petitioner to raise them in a successive post-conviction motion. Colo.R.Crim.P. 35(c)(3)(VII) (providing that post conviction relief is not available to a petitioner for a claim that could have been presented in a previous postconviction proceeding);[3] People v. Versteeg, 165 P.3d 760, 763 (Colo.App. 2006) (stating that Rule 35(c) motions filed after July 1, 2004, are subject to procedural bar in Rule 35(c)(3)(VII)). See also Hubbard, 519 P.2d 945, 947-48 (stating that Rule 35 does not authorize a defendant to file successive motions based on similar allegations). The petitioner has already raised in a post-conviction motion claims regarding the ineffective assistance of his trial counsel. Under Rule 35(c)(3)(VII) and Hubbard, he cannot raise ineffective assistance of trial counsel in another post-conviction motion. Id. In addition, to the extent the petitioner raised any of the unexhausted claims in the state district court but did not appeal them to the state appellate court, the state appellate court rules prohibit the petitioner from appealing the claims at this late date. C.A.R. 4(b)(1); People v. Adams, 905 P.2d 17, 18 (Colo.App. 1995). Similarly, to the extent the petitioner appealed claims to the state appellate

---

[3]Colorado Rule of Criminal Procedure 35(c)(3)(VII) provides: The court shall deny any claim that could have been presented in an appeal previously brought or postconviction proceeding previously brought except the following: (a) Any claim based on events that occurred after initiation of the defendant's prior appeal or postconviction proceeding; (b) Any claim based on evidence that could not have been discovered previously through the exercise of due diligence; (c) Any claim based on a new rule of constitutional law that was previously unavailable, if that rule should be applied retroactively to cases on collateral review; (d) Any claim that the sentencing court lacked subject matter jurisdiction; (e) Any claim where an objective factor, external to the defense and not attributable to the defendant, made raising the claim impracticable.

court but did not appeal them to the state supreme court, the rules prohibit him from appealing to the supreme court now.  C.A.R. 52(b)(3).[4]

I may not consider issues raised in a habeas petition that have been defaulted in state court on an independent and adequate procedural ground unless the petitioner can either (1) show cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) demonstrate that a failure of this court to consider the claims will result in a fundamental miscarriage of justice.  English v. Cody, 146 F.3d 1257, 1259 (10th Cir.1998) (citing Coleman, 501 U.S. at 749-50); Steele v. Young, 11 F.3d 1518, 1521 (10th Cir.1993).

The petitioner has not argued cause and prejudice or fundamental miscarriage of justice. Therefore, the unexhausted portions of Claim One are not proper for habeas review.

As to the exhausted claims for ineffective assistance of counsel, the applicable federal law on this issue is clearly established.  When reviewing a claim for ineffective assistance of counsel, the court starts with the presumption that counsel's conduct was constitutionally effective. Strickland v. Washington, 466 U.S. 668, 690 (1984).  "Judicial scrutiny of counsel's performance must be highly deferential."  Id. at 689.

To prevail on a claim for ineffective assistance of trial counsel, a habeas petitioner must affirmatively show (1) that counsel's performance was deficient or, in other words, "fell below an objective standard of reasonableness," and (2) that counsel's errors prejudiced petitioner, that is to say "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Id.

---

[4]The respondent asserts that the petitioner is prohibited from filing another Rule 35(c) motion because the three year statute of limitation for filing postconviction motions has expired pursuant to § 16-5-402, C.R.S.  *Answer*, p, 14.  However, section 402 does not impose on individuals convicted of Class 1 felonies a limitation period for filing postconviction motions.  The petitioner was convicted of felony murder, a Class 1 felony.  § 18-3-102.  Therefore, the petitioner is not subject to the three year limitation period.

at 687-88. Because the purpose of the Sixth Amendment's guarantee to counsel is to ensure that a criminal defendant receives a fair trial, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." Id. at 691.

The petitioner first claims that his trial counsel were ineffective for failing to call two paramedics and Terry Tanner as witnesses and for failing to properly investigate the scene of the crime and interview witnesses early on. The state district court held an evidentiary hearing on these and other claims of ineffective assistance of trial counsel. *Supplemental Volume*. At the hearing, the petitioner called two witnesses. The first witness, Neil Silver, was qualified as an expert as to the standard of practice in criminal defense. The second witness was the petitioner.

On direct examination, Mr. Silver testified that, as a lawyer representing the petitioner on a charge of first degree murder, he believed it was absolutely critical to visit the crime scene as early as possible. Id. at pp. 28-30. He further testified that the paramedics who transported a key witness, Donna Dotter, should have been called as witnesses at trial to testify as to Ms. Dotter's ability to perceive and recall the incident because she had a blood alcohol level of .35 at the time of the incident and evidence of her blood alcohol level was inadmissible. Id. at pp. 30-35. The petitioner testified that his defense counsel should have called Terry Tanner as a witness because Tanner heard Robert Criswell (a.k.a. "Hobo Bob") admit to murdering the victim. Id. at pp. 76-77. He further testified that the paramedics should have been called to testify about Ms. Dotter's awareness of the incident, id. at pp. 77-78; and "apparently" the defense counsel did not do their own investigation, but relied instead on the District Attorney's investigation. Id. at p. 84.

On cross-examination, Mr. Silver testified that he did not know whether defense counsel or their investigator had actually visited the crime scene, and that it was entirely possible that they did visit the scene. Id. at pp. 52-53. He further testified that defense counsel interviewed the available key witnesses prior to trial. Id. at pp. 59-65. He stated that the paramedics are the only witnesses not subpoenaed which would constitute ineffective assistance of counsel. Id. at pp. 64-65, 72-73. However, he agreed that defense counsel very thoroughly cross-examined Ms. Dotter and vigorously attacked Ms. Dotter's credibility by eliciting testimony from her that she was "blitzed" at the time of the incident; she was a chronic alcohol abuser; she had been in treatment for alcohol abuse several times; and she had made several inconsistent statement throughout the course of the investigation and trial. Id. at pp. 66-67, 68-72.

When cross-examined, the petitioner testified that Tanner was not an eyewitness to the crime, but he would have testified at trial that Robert Criswell admitted to him that he had murdered the victim by strangulation. Id. at pp. 91-93. The petitioner conceded that the victim was not killed by strangulation, but by blunt trauma and drowning. Id. at p. 103.

After reviewing the trial transcripts and the evidence presented at the hearing, the district court judge issued a written order denying the Rule 35(c) motion:

> The Court finds that the defense did not sustain its burden as to these allegations:
>
> 1(a). Mr. Silver testified that he does not know whether or not the trial counsel and/or their investigator visited the crime scene, (b) Mr. Silver could not specify what, if any, additional information could have been garnered from such a visit, (c) an extensive crime scene video and numerous photos, taken close in time to the incident, were available to the defense and utilized at trial, (d) the video and photos amply depicted the shrubbery, weeds and bushes, as well as the curved pathway to the river, all of which were argued as obstructions to the witnesses' ability to see the incident, and (e)

defense counsel vigorously cross-examined the witnesses as to their ability to see what was occurring during the assault and homicide.

2(a).  Witness Donna Dotter was vigorously cross-examined as to her level of intoxication at the time of the incident, (b) Ms. Dotter testified that she was "blitzed" at the time and evidence established that she was a chronic alcohol abuser who had been in several treatment programs, (c) a doctor from St. Anthony's Hospital, Dr. Robert Schmidt, who treated Ms. Dotter, testified as to her high level of intoxication, (d) Mr. Silver conceded that trial counsel was well-prepared to cross-examine the witness and brought out numerous inconsistencies in her statements, and (e) defense launched a multi-tiered attack on Ms. Dotter's credibility.

* * *

4.  Additionally, the evidence presented at hearing indicated that trial counsel conducted extensive pre-trial interviews of witnesses, particularly Ms. Dotter and Mr. Cummings who were the only two eyewitnesses to the incident.  The defense attacked the first degree murder charge on the grounds of intoxication and challenged the felony murder charge on grounds that the attempted sexual assault never occurred.

5.  At the hearing, the defendant Wayne Smith also testified.  He alleged that his trial attorneys, Mr. Michael Linge and Mr. Fred Martinez, did not pursue the proper defense, namely, that another individual had committed the murder with which he was charged. However, the witnesses whom the defendant believed should have been called to support his position were either unlocatable, by either the prosecution or the defense, or would have supported the prosecution case.  Witness Cory Marrs was a transient who could not be found and, according to his two prior written statements, his testimony would have incriminated the defendant.  Another potential witness, Terry Tanner, was not even present during the assault and murder and his statements concerning a "confession" by Robert Criswell, an alleged co-defendant were hearsay and also were not supported by available evidence.  Additionally, there was no showing that the testimony of the two paramedics who responded to the scene would have supported the defense theory and their testimony would have been cumulative in light of the other extensive testimony presented at trial.

6.  Finally, the defendant, by his own admissions, confessed to assaulting the victim and dragging him down to the river after his pants had been pulled down around his ankles.  Even the expert called by the defense at the 35(c) hearing, conceded that the trial attorneys were well prepared and vigorously challenged the prosecutions' evidence. . . .

7.  The Court determines, based on review of the trial transcripts, as well as the evidence presented at the 35(c) hearing, that the defendant's attorneys' performance was not deficient in that it did not fall below the level of reasonable competent assistance. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); People v. Cole, 775 P.2d 551 (Colo. 1989). Accordingly, the defendant's 35(c) Motion is hereby denied.

*District Court Record*, Bates Nos. 000347-000349.

The state appellate court upheld the district court's ruling as follows:

Defendant next argues that the trial court erred by finding that he failed to meet his burden of proving his trial attorneys performed ineffectively by not: (1) subpoenaing the paramedics who transported the female eyewitness to the hospital; (2) not subpoenaing a witness who, according to defendant, heard the codefendant state that he had strangled the victim; and (3) visiting the crime scene.  We are not persuaded.

Defendant did not call the paramedics or the witness who allegedly heard the codefendant confess to the murder to testify at the postconviction hearing.  Therefore, because the defendant did not demonstrate what the substance of the missing witnesses' testimony would have been, we conclude the record supports the trial court's finding that he failed to demonstrate prejudice.

Likewise, because the defendant did not call either of his former attorneys to testify at the postconviction hearing, we conclude that the record supports the trial court's finding that the defendant failed to prove the attorneys did not visit the crime scene.  Moreover, the record also supports the trial court's finding that defendant failed to demonstrate what information the attorneys would have obtained by visiting the crime scene that was not otherwise available through examination of the crime scene photographs and video.

*Answer*, Ex. K, p. 4.

The state courts' decisions regarding these claims are fully supported by the record. The decisions are not contrary to, nor do they involve a unreasonable application of, established federal law. The petitioner offers no clear and convincing evidence to rebut the factual determinations of the state courts. Therefore, I find that the state courts' resolution of these issues resulted in a decision that was based on a reasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Consequently, I find no basis to grant the Application as to these claims.

The petitioner next claims that his trial counsel was ineffective for failing to retain a toxicologist to testify as an expert witness. The state district court took evidence on this claim at the Rule 35(c) hearing. *Supplemental Volume*. Mr. Silver testified that, in order to attack Ms. Dotter's testimony, "this would have been a case that would have been appropriate at least to retain and attempt to offer an expert just into the effects of alcohol, both short-term effects and long-term effects." Id. at pp. 35, 73. As noted above, the district court found that the defense counsel vigorously cross-examined Ms. Dotter, established her alcohol-induced impairment, and launched a "multi-tiered attack" on her credibility. *District Court Record*, Bates No. 000348. This finding is supported by the record.

The state appellate court upheld the district court's denial the claim:

> Defendant argues that the trial court erred by finding he failed to meet his burden of proving his trial attorneys performed ineffectively by not calling a toxicologist to testify concerning the effects of alcohol on the female eyewitness. We disagree.
>
> To prevail on a claim of ineffective assistance of counsel, a defendant must affirmatively show that his or her attorney's performance fell below the standard of professional reasonableness and that such performance prejudiced the defense. To prove prejudice, the defendant must show a reasonable probability that,

16

but for such deficient performance, the outcome at trial would have been different.

Because a presumption of validity attaches to the judgment of conviction, the burden is on the defendant to prove both elements of an ineffective assistance claim by a preponderance of the evidence. Therefore, when a claim of ineffective assistance may be disposed of on the ground of lack of prejudice, there is no need to assess counsel's performance.

The weight and credibility to be given the testimony of witnesses in a Crim. P. 35(c) hearing are within the province of the trial court. And, if there is sufficient evidence in the record to support the court's findings, the ruling will not be disturbed on review.

Here, defendant did not call a toxicologist to testify at the postconviction hearing. Therefore, we have no basis for determining whether a toxicologist's testimony would have changed the outcome of the defendants' trial. Furthermore, the record supports the trial court's finding that trial counsel vigorously attacked the credibility of the female eyewitness by demonstrating her alcohol impairment, her inconsistent recollections, and her history of alcohol addiction. Accordingly, we conclude defendant failed to carry his burden of proving prejudice.

*Answer*, Ex. K, pp. 2-3 (citations omitted).

The petitioner did not demonstrate that counsels' failure to call a toxicologist expert was unreasonable or deprived him of a fair trial. Therefore, the state courts' denial of this claim is not contrary to established federal law, nor did it result in an unreasonable determination of the facts presented in the state court proceeding. The petitioner has not by clear and convincing evidence rebutted any factual determinations made by the state court. Therefore, I find no basis upon which to grant the petitioner's Application with regard to this claim. 28 U.S.C. § 2254(d).

Finally, the petitioner asserts that his trial counsel were ineffective because they failed to advocate for his right to testify. The petitioner raised this argument to the district court at the Rule 35(c) hearing. *Supplemental Volume*, pp. 80-82.

On direct examination, he stated that he decided to testify after seeing Mr. Cummings use a document to refresh his recollection which had not been produced to the defendant. Id. at p. 81. He stated that "[t]here should have been a mistrial right there on the spot" and "when I seen that, I felt I wasn't getting--I was getting buffaloed in a way." Id. He told his lawyers "I want to testify now." Id. at pp. 81-82. At that point, the parties went into the judge's chambers. Id. at p. 82. The petitioner stated that he was upset and "I stutter a lot when I get upset, and my lawyers and the judge told me that he wasn't going to allow me to come back out there and cause no scene." Id.

On cross-examination, the petitioner stated he told his lawyer, Mr. Linge, that he wanted to testify, id. at p. 94, and that Mr. Linge then alerted the judge that the petitioner had something he wanted to put on the record. Id. at pp. 97, 98. The petitioner and the judge engaged in the colloquy stated in Claim Two. The petitioner stated that because he was stuttering, his lawyers should have told the judge he wanted to testify. Id. at p. 98.

The district judge did not specifically address this claim in the order denying the petitioner's Rule 35(c) motion. The state appellate court addressed the claim as follows:

> Finally, defendant contends his trial attorneys performed ineffectively by not advocating for him when, after receiving a full advisement in accordance with People v. Curtis, 681 P.2d 504, 513-14 (Colo. 1984), and after validly waiving his right to testify, he changed his mind and decided he wished to testify. We disagree.
>
> The record reflects that defendant was given an extended and complete advisement concerning his right to testify and also his right to remain silent prior to the prosecution resting. At the close of that day, after defendant had had an opportunity to discuss the matter with counsel, the court asked defendant whether he had made a decision concerning testifying, and defendant asked for additional time to consider the matter.

At the morning conference, the court inquired as to whether defendant had made up his mind concerning testifying. Defense counsel indicated that defendant would not be testifying. The trial court then further advised defendant, verified that he had talked with counsel, and concluded that his decision not to testify was knowing, intelligent, and voluntary.

Later that same day, after both parties has [sic] rested and during an instruction conference, defendant made a statement attacking his trial counsel for their failure to investigate the case, most particularly their failure to interview and call the paramedics who took the female witness to the hospital and the physician who treated her at the hospital. Somewhat later, and apparently spontaneously, defendant and the trial court engaged in the following exchange:

> THE DEFENDANT: Do I get to say in front of the jury - - it don't matter. It was important that I get her impeached, [Donna Dotter], and suppressed her evidence, and these witnesses, if they would have come in, they will get suppressed or impeached, Judge? It's against my constitutional rights.

> THE COURT: Well, Mr. Smith, you had an opportunity to testify. I found that you knowingly, intelligently, voluntarily waived that right.

> THE DEFENDANT: No, but the job ain't been done right, Judge.

It is not clear on this record that defendant reasserted, or even attempted to reassert, his right to testify. Moreover, the trial record indicates that, after defendant validly waived his right to testify, he addressed the court a second time and did not alert the court to his supposed desire to testify. Under these circumstances, defendant cannot fault his attorneys for failing to advocate on his behalf.

In addition, in his postconviction motion, defendant alleged his trial attorneys actively "interfered with his right to testify," an assertion different from the claim he now seeks to litigate on appeal.

*Answer*, Ex. K, pp. 5-6 (citations omitted).

The petitioner conceded that he told one of his trial attorneys that he wished to testify and that the attorney then alerted the judge that the petitioner had something he wanted to put on the record. The petitioner did not thereafter affirmatively state to the judge that he wished to testify. To the contrary, it appears that the petitioner abandoned his desire to testify when he stated "[d]o I get to say in front of the jury - - it don't matter."

The petitioner did not demonstrate to the state courts that his counsels' failure to tell the judge he wished to testify was unreasonable and deprived him of a fair trial. Therefore, the appellate court's denial of this claim was not contrary to <u>Strickland</u>, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence. The petitioner has not by clear and convincing evidence rebutted any of the state courts' factual determinations. Accordingly, the petitioner has not provided any basis to grant the Application as to this claim.

### C. Claims Three, Four and Five

Claim Three alleges that witness Cummings' use of a typed statement during his testimony violated the petitioner's right to due process because it was not provided in discovery. The respondents assert that the petitioner has not exhausted this claim. My review of the record reveals that the petitioner did not present Claim Three to the state appellate court or the state supreme court for review. *Answer*, Exs. A, E, H, N, and O. Therefore, the petitioner failed to exhaust Claims Three prior to bringing it in this Court.

This claim is procedurally defaulted. The petitioner asserted at his Rule 35(c) hearing that trial counsel were ineffective because they did not properly object to Cummings' use of the typed

statement during his testimony.[5] *Supplemental Volume*, The People of the State of Colorado vs. Wayne A. Smith, 92CR2275, 03CA1210 [Doc. #27, filed December 13, 2007], pp. 37, 40-44, 81. Under <u>Hubbard</u> and Rule 35(c)(3)(VII), Colo.R.Crim.P., the petitioner would be prohibited from reasserting this claim as a due process violation.

Claim Four alleges that the petitioner's right to due process was violated because his attorney was not permitted to establish that Cummings had requested a competency evaluation during his own trial proceedings. The respondents assert that the petitioner has not exhausted this claim. The petitioner did not present Claim Four to the state appellate court or the state supreme court for review. *Answer*, Exs. A, E, H, N, and O. Therefore, the petitioner failed to exhaust Claim Four. As with Claim Three, this claim is procedurally barred by Rule 35(c)(3)(VII) because it could have been asserted on direct appeal or in the petitioner's Rule 35(c) motion.

Claim Five alleges that the prosecutor deprived the petitioner of due process when he improperly shifted the burden of proof to the petitioner during closing arguments by stating that the petitioner should have proved that Cummings "had some sort of sweet deal." The petitioner presented this claim to the state appellate court on direct appeal. *Answer*, Ex. A, pp. 11-13. However, the petitioner did not present this claim to the state supreme court. <u>Id.</u> at Exs. N and

---

[5]The district court judge denied the claim as follows:

> Counsel's claim that witness Allen Cummings' memory was improperly refreshed is without merit. Trial counsel correctly directed Mr. Cummings [sic] attention to a statement which he had provided to a prosecution investigator in order to refresh Mr. Cummings' memory. Defense counsel was provided with this statement at the time it was utilized in court.

The petitioner did not present the claim to the appellate court. *Answer*, Ex. H.

O. Therefore, Claim Five has not been exhausted in the state courts. For the reasons stated in my analysis of Claim One, Claim Five is procedurally defaulted.

I may not consider issues raised in a habeas petition that have been defaulted in state court on an independent and adequate procedural ground unless the petitioner can either (1) show cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) demonstrate that a failure of this court to consider the claims will result in a fundamental miscarriage of justice. English v. Cody, 146 F.3d 1257, 1259 (10th Cir.1998) (citing Coleman, 501 U.S. at 749-50); Steele v. Young, 11 F.3d 1518, 1521 (10th Cir.1993).

The petitioner has not argued cause and prejudice or fundamental miscarriage of justice. Because these claims are procedurally defaulted, and because the petitioner did not demonstrate cause and prejudice or a fundamental miscarriage of justice, Claims Three, Four, and Five are not proper for consideration on an application for writ of habeas corpus.

## IV. CONCLUSION

I respectfully RECOMMENDED that the Application be DENIED.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated April 18, 2008.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge